UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANNAMARIE S.,[1]

      Plaintiff,

                                        Case No. 1:24-cv-6638
  v.                          Magistrate Judge Norah McCann King

FRANK BISIGNANO,[2]
Commissioner of Social Security,

      Defendant.

OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Annamarie S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

I.      PROCEDURAL HISTORY

On October 7, 2020, Plaintiff filed her application for benefits, alleging that she has been disabled since May 6, 2016. R. 62, 77, 208–09. The application was denied initially and upon

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

reconsideration. R. 84–87, 89–92. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 93–94. ALJ Elizabeth Lardaro held a hearing on April 17, 2023, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 43–61. In a decision dated June 1, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from May 6, 2016, Plaintiff's alleged disability onset date, through December 31, 2021, the date on which Plaintiff was last insured for Disability Insurance Benefits. R. 19–37. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 15, 2024. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On February 14, 2025, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 18.[3] On February 28, 2025, the case was reassigned to the undersigned. ECF No. 19. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or

simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for

determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d

632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

6

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between May 6, 2016, her alleged disability onset date, and December 31, 2021, her date last insured. R. 21.

At step two, the ALJ found that Plaintiff's diabetes, cervical degenerative disc disease and radiculopathy, and lumbar degenerative disc disease and radiculopathy were severe impairments. R. 21. The ALJ also found that the following impairments were not severe: hypertension, hyperlipidemia, Hashimoto's disease, carpal tunnel syndrome, obesity, and anxiety disorder. R. 22–28.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 28–29.

At step four and relying on the testimony of the vocational expert, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 29–37. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a payroll clerk, accounting clerk, and "personal" clerk. R. 36–37. The ALJ therefore concluded that Plaintiff was not disabled at any time within the meaning of the Social Security Act from May 6, 2016, her alleged disability onset date, through December 31, 2021, the date on which she was last insured for benefits. R. 37.

Plaintiff disagrees with the ALJ's findings at steps two and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief*, ECF No. 8; *Plaintiff's Reply Brief*, ECF

No. 17. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 16.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.   State Agency Psychological Consultants

Robert Eckardt[4] conducted an initial review of Plaintiff's medical record on behalf of the state agency on May 27, 2021. R. 63–69. Consultant Eckardt found that Plaintiff's mental disorders—depressive, bipolar and related disorders as well as anxiety and obsessive-compulsive disorders—were not severe. R. 65. In conducting the psychiatric review technique ("PRT") in connection with the criteria of Listings 12.04 and 12.06, Consultant Eckardt concluded that Plaintiff had medically determinable impairments, but that those impairments did not satisfy the criteria for those listings. *Id*. Consultant Eckardt specifically opined that Plaintiff had only mild limitations in the paragraph B criteria, namely, understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id*. (finding further that the record did not document the "C" criteria of the listings). Under the heading "PRT Additional Explanation[,]" Consultant Eckardt further explained why Plaintiff's mental impairments were not severe:

> 57 yr old female alleging physical ailments and anxiety. No inpt psych hx. PCP prescribes xanax for anxiety. No formal psych hx prior to beginning therapy with social worker a few months ago. 3/21 and 2/21 sessions reveal mental status is entirely intact including euthymic mood. At Psych CE, she reported sx of depression and anxiety. However, mental status was grossly within normal limits. Report of sx is only partially consistent with findings. Consistent with her marginal psych hx, there are no indications/findings of a severe psych impairment in file.

---

[4] Other than his specialty of psychology, R. 65, Consultant Eckhardt's credentials do not appear in the record.

Able to perform adls from a psych standpoint. Not Severe[.]

R. 65–66.

Amy Brams[5] reviewed Plaintiff's medical record upon reconsideration for the state

agency on August 5, 2021. R. 70–76. Consultant Brams agreed with Consultant Eckardt that,

*inter alia*, Plaintiff had non-severe medically determinable mental impairments of depressive,

bipolar and related disorders as well as anxiety and obsessive-compulsive disorders. R. 72. She

also agreed that Plaintiff had only a mild limitation in the four broad areas of functioning under

paragraph B. *Id*. (finding further that evidence did not establish the presence of the "C" criteria).

Under the heading "PRT Additional Explanation[,]" Consultant Brams agreed that Plaintiff's

mental impairments were not severe, explaining as follows:

> 57 year old reconDI alleges too tired and in pain to do things, mood swings, think
> straight, continues to express anxiety, Posttraumatic stress from MVA.

> 57 yr old female alleging physical ailments and anxiety. No inpt psych hx. PCP
> prescribes xanax for anxiety. No formal psych hx prior to beginning therapy. with
> social worker a few months ago. 3/21 and 2/21 sessions reveal mental status is
> entirely intact including euthymic mood. At Psych CE, she reported sx of
> depression and anxiety. However, mental status was grossly within normal limits.
> Report of sx is only partially consistent with findings. Consistent with her marginal
> psych hx, there are no indications/findings of a severe psych impairment in file.
> Able to perform adls from a psych standpoint. Not Severe[.]

> Recon: Updated MER 6/28/21; wants to be able to drive again, PCP suggested
> therapy to learn to manage anxiety, is frustrated with pain, is agitated and angry.
> Meds Xanax. Had disagrrement [sic] about expectation of therapy and ended
> relationship late April. 6 sessions, was helped. MSE WNL except angry mood.
> ADL; can manage money, sometimes drives short distances, sometimes shops in
> stores, needs some reminders, gets along with authority figures.
> Affirmation; not severe

R. 72–73.

---

[5] As with Consultant Eckardt, Consultant Brams' credentials, other than her psychology
specialty, R. 73, do not appear in the record.

9

**B.      Thomas Godleski, D.O.**

On October 3, 2022, Thomas Godleski, D.O., of Virtua Family Medicine, Plaintiff's treating physician, completed a three-page, check-the-box, and fill-in-the-blank "Medical Source Statement." R. 479–81. Dr. Godleski stated that he had treated Plaintiff for eleven years and he diagnosed chronic lower back pain, panic disorder, post-traumatic stress disorder ("PTSD"), and Type 2 diabetes mellitus. R. 479. According to Dr. Godleski, Plaintiff had the following symptoms/signs: musculoskeletal pain (lower back / lumbar); extremity numbness, pain, and/or tingling; difficulty walking / abnormal gait; muscle spasm; and psychological problems (panic attacks). *Id*. Plaintiff's symptoms and limitations were reasonably consistent with the medical signs and findings and Dr. Godleski stated that Plaintiff was credible regarding the severity, durations, frequency, and other factors regarding her pain, fatigue, or other symptoms, citing Plaintiff's "MRI Lumbar 11/10/21 severe stenosis L4/L5[.]" R. 480. Plaintiff's treatment consisted of physical therapy and epidural steroid injections. *Id*. Dr. Godleski also indicated that Plaintiff suffered from the following medication side effects: drowsiness, lethargy, and/or fatigue (metaxalone and gabapentin); confusion and/or disorientation (metaxalone and gabapentin); dry mouth (metaxalone); and blurred vision (gabapentin). *Id*. Asked about the expected effect of Plaintiff's prescribed medications on her functioning in a work setting, Dr. Godleski chose the option "[s]ignificant side effects can be expected to limit the effectiveness of work duties, *i.e.*, difficulty focusing / concentrating for frequent (34% to 66% of an 8-hour workday) periods of time." *Id*. Furthermore, her symptoms and limitations would require her to lie down or recline for at least a total of 1.5 to 2 hours at unpredictable times of the day. R. 481. Her impairments would likely produce "good days" and "bad days[.]" *Id*. Asked to identify any psychological conditions that would affect and/or would result from Plaintiff's physical condition, Dr. Godleski checked

the box indicating anxiety. *Id*.

On apparently the same day, Dr. Godleski answered several supplemental questions. R. 482–87.[6] Dr. Godleski affirmed that Plaintiff's conditions had existed and had persisted with the restrictions as outlined in the Medical Source Statement since at least 2016. R. 482. On average, Plaintiff would likely need to be absent from work four or more days per month as a result of her impairments and treatment. R. 483. Plaintiff was likely to be off task 25% of a typical workday. R. 484. He opined on Plaintiff's ability to do work-related activities on a day-to-day basis in a regular work setting, using the following scale: "No limitation"; "Mild"; "Moderate" (ability to function in this area is seriously limited and less than satisfactory, but not precluded; this is a substantial loss of ability to perform the work-related activity; this can also mean that functioning in this area is precluded up to one-third of the workday); "Marked" (the person cannot satisfactorily perform this activity independently, appropriately, effectively, an on a sustained basis in a regular work setting); "Extreme" (the person cannot perform this activity in a regular work setting). R. 485. According to Dr. Godleski, Plaintiff had mild limitations in her abilities to carry out very short and simple instructions; maintain attention for two hour segments; work in coordination with or proximity to others without being unduly distracted; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and be aware of normal hazards and take appropriate precautions. *Id*. Plaintiff was moderately limited in the following abilities: remember work-like procedures; understand and remember very short and simple instructions; maintain regular attendance and be punctual within customary, usually strict

---

[6] Dr. Godleski's answers to the supplemental questions are undated. *See id.* The Court Transcript Index suggests these documents were dated October 3, 2022, the same date as his Medical Source Statement.

tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; ask simple questions or request assistance; and accept instructions and respond appropriately to criticism from supervisors. *Id*. Dr. Godleski also opined that Plaintiff was markedly limited in her abilities to perform at a consistent pace without an unreasonable number and length of rest periods and to deal with normal work stress. *Id*. Plaintiff's pain "is present, such as to prevent this patient from performing normal, full-time work activities on a frequent (more than 3–4 days per month) basis." R. 486. Moreover, physical activity such as walking, standing, bending, stooping, moving or extremities, etc., would increase Plaintiff's pain "to such a degree as to require increased medication for pain or substantial amounts of bed rest." *Id*. According to Dr. Godleski, Plaintiff could walk 1 city block without rest or severe pain, could sit less than 4 hours, and could stand/walk up to 1 hour in an average eight-hour working day (not counting periods for breaks, resting, or lying down, if applicable). R. 487. Use of a cane or other assistive device was not reasonably necessary or recommended. *Id*. Plaintiff could occasionally lift and carry 10 pounds and could rarely lift and carry 20 pounds. *Id*.

## V.    DISCUSSION

### A.    Step Two

Plaintiff first argues that the ALJ erred in concluding, at step two of the sequential evaluation, that Plaintiff's anxiety was not a severe impairment. *Plaintiff's Brief*, ECF No. 8, pp. 13–16; *Plaintiff's Reply Brief*, ECF No. 17, pp. 3–4. For the reasons that follow, this Court disagrees.

At step two, an ALJ determines whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). "So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless." *Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); *see also Orr v. Comm'r Soc. Sec.*, 805 F. App'x 85, 88 (3d Cir. 2020) ("Orr cannot overcome that fact: because the ALJ progressed to a later step, any error at Step Two would not alter the remainder of the five-step process, much less the overall outcome. And without more, Orr provides no valid basis for remand."); *Rafine v. Comm'r of Soc. Sec.*, No. 1:19-CV-14215, 2020 WL 3073829, at *4 (D.N.J. June 10, 2020) ("The Court finds that any error in the ALJ's step two determination as to the severity of Plaintiff's impairments of PBA, OSA, and narcolepsy is harmless because contrary to Plaintiff's argument, the ALJ properly considered these impairments in the overall RFC assessment."); *Edinger v. Saul*, 432 F. Supp. 3d 516, 531 (E.D. Pa. 2020) (finding that, where the ALJ found the claimant's carpal tunnel syndrome not severe at step two but found other impairments severe at that step and went on to consider such syndrome when crafting the RFC at step four, "[b]ecause the ALJ properly considered Ms. Edinger's carpal tunnel in the remainder of the analysis, even if the ALJ erred at step two, any error was harmless"); *Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe,

13

engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding.").

As detailed above, the ALJ in this case found in Plaintiff's favor at step two, when she found that Plaintiff's diabetes, cervical degenerative disc disease and radiculopathy, and lumbar degenerative disc disease and radiculopathy were severe. R. 21. The ALJ also explained why she found that Plaintiff had only "mild" limitations in the four broad areas of mental functioning and, therefore, why Plaintiff's medically determinable mental impairment of anxiety disorder was not severe:

*Mental Impairment*

The claimant's Xanax dosage on January 30, 2018 was .75 mg daily (Exhibit B4F). Her mood and affect were normal.

Dr. McGrath examined the claimant on September 30, 2019 (Exhibit B2F). She indicated that she felt a little depressed because she could not do anything.

The claimant requested a refill of Xanax on December 6, 2019 (Exhibit B4F). She had last refilled the medication several months earlier and did not take it daily.

Dipal Patel, L.C.S.W., examined the claimant on November 18, 2020 (Exhibit B4F). The claimant preferred not to take medication for her mood. She occasionally used Xanax. She exhibited a depressed mood and affect. Her concentration was focused. Her insight and judgment were fair. She was cooperative.

On December 11, 2020, D. Patel noted that her mental status examination remained unchanged from November 18, 2020 (Exhibit B4F). The claimant was working on exposure and getting more comfortable driving.

Dipal Willoughby, L.C.S.W. examined the claimant on Janaury [sic] 7, 2021 (Exhibit B4F). Her mental status examination remained unchanged from November 18, 2020. The claimant was driving short distances when the weather was nice or with her husband in the passenger seat.

D. Willoughby noted on February 4, 2021 that her mental status examination remained unchanged from November 18, 2020 (Exhibit B4F). The claimant reported that she had not done much driving as she had difficulty lifting packages if she went alone. She indicated that she resided in a remote area and there were

14

few places to drive a short distance from her home. She was advised to increase her distance away from home while driving.

On February 25, 2021, D. Willoughby examined the claimant on February 25, 2021 (Exhibit B4F). The claimant had made several trips out in the car on her own. The claimant's mental status examination remained unchanged from November 18, 2020 except that she had a euthymic mood and her insight and judgment were good.

D. Willoughby examined the claimant on March 24, 2021 (Exhibit B4F). The claimant was driving more lately. She had been relaxed and took her time traveling. She had been working to balance her needs with her mother's needs. Her mother resided with her and needed care, which was provided during the day. The claimant was leaving the home during this period to attend to her needs. She was looking into getting a part time job with Visiting Angels, which allowed her to deal with her chronic pain and the need to get up and stretch. Her mental status examination remained unchanged from February 25, 2021.

J. Theodore Brown, Jr., Ph.D., performed a consultative examination on April 27, 2021 (Exhibit B5F). Her medications included Xanax, which was prescribed at .25 mg by her primary care physician. She had been seeing a therapist every three weeks for the previous two months. She complained about depressive and anxiety related symptoms. Her hygiene was adequate. She had acquaintances, not friends. She shared household chores with her husband. Her husband managed the financial matters. She could manage her personal care needs. She spent her time at home on the couch watching television, napping, pacing herself and navigating her pain. Upon examination, the claimant had normal motor behavior and normal eye contact. Her mood was neutral. Her affect was appropriate. Her judgment was intact and her insight was fair. She had an impaired memory. She could perform simple calculations. Her concentration was impaired. The claimant was diagnosed with major depressive disorder, generalized anxiety disorder and rule out PTSD.

Lynette Albanese, L.P.C., examined the claimant on June 28, 2021 (Exhibit B6F). The claimant had been in a motor vehicle accident in 2016 and was afraid to drive. Her primary care physician had recommended that she attend therapy to manage her anxiety. She was frustrated by being in pain all of the time. She felt overwhelmed, angry and frustrated. She was unable to focus due to her anxiety. She ended her relationship with her previous therapist in April 2021 after she attended 6 sessions but had a disagreement about their expectations of therapy. Upon examination, her mood was angry and her affect was appropriate. She had no deficits in her memory, attention or concentration. Her insight and judgment were intact. The remainder of her mental status examination was normal. She was diagnosed with generalized anxiety disorder.

*Date Last Insured – December 31, 2021*

Gianna Vaccarino, L.P.C., examined the claimant on December 13, 2022 (Exhibit B12F). She underwent a total of six treatment sessions prior to the end of her treatment on March 1, 2023. On January 18, 2023, the claimant indicated that she had recently taken a solo drive of approximately 30 minutes in length. The claimant admitted to taking a few short distance drives during the week prior to February 1, 2023. By March 1, 2023, the claimant reported that she had symptoms related to the interview process for a job, her relationship with her husband and driving anxiety. She took her usual weekend drives with her husband and felt moderate anxiety. During her mental status examination, her memory, attention and concentration were intact. Her insight and judgment were intact. Her thought process was tangential and her affect was anxious and sad. Her presentations between December 13, 2022 and February 15, 2023 were generally consistent with her presentation on March 1, 2023 as they reflected anxiety in her affect with other factors on occasion. She was diagnosed with phobic anxiety disorder and generalized anxiety disorder.

On March 31, 2023, Gianna Vaccarino, L.P.C., indicated that the claimant had been treated since December 12, 2022 for anxiety disorder and fear of driving or being a passenger in a car (Exhibit B14F).

The claimant's medically determinable mental impairment of anxiety disorder did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore nonsevere.

In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is understanding, remembering or applying information. In this area, the claimant had mild limitation.

On November 11, 2020, the claimant completed an Adult Function Report (Exhibit B5E). She needs reminders to take her medications and manage her personal care needs. She can manage her financial matters. She has problems with understanding, memory and following instructions.

The claimant completed an Adult Function Report on July 6, 2021 (Exhibit B8E). She needs reminders to take her medications and manage her personal care needs. She can manage her financial matters. She has problems with understanding, memory and following instructions.

The undersigned notes that the claimant alleged problems with understanding, remembering and applying information (Exhibits B5E and B8E). The undersigned notes that the claimant's memory, was impaired and her insight and judgment were fair during Dr. Brown's examination (Exhibit B5F). However, he was a one-time

16

examining mental health professional, who was not in a treatment relationship with the claimant and could not provide care. Approximately nine weeks later, during an evaluation with a treating medical professional, who could provide care, she had no memory deficits and intact insight and judgment (Exhibit B6F). Further, even though her evaluations with Ms. Vaccarino were after the date last insured, she continued to exhibit an intact memory and intact insight and judgment between December 2022 and February 2023 (Exhibit B12F). She could manage her financial matters (Exhibits B5E and B8E). After carefully considering these factors including one episode of fair insight and judgment in 2020, the undersigned finds that she has a mild limitation in this broad area of mental functioning (Exhibit B4F).

The next functional area is interacting with others. In this area, the claimant had mild limitation.

On November 11, 2020, the claimant completed an Adult Function Report (Exhibit B5E). She shops in stores. She spends time with others. She socially isolates. She has problems getting along with others because she has no time for disloyalty. She can get along with authority figures. She has never been fired from a job due to problems getting along with others.

The claimant completed an Adult Function Report on July 6, 2021 (Exhibit B8E). She shops in stores. She spends time with others. She socially isolates. She has problems getting along with others because she has no time for disloyalty. She can get along with authority figures. She has never been fired from a job due to problems getting along with others.

The undesigned notes that the claimant alleged that she socially isolated herself and had problems getting along with others (Exhibits B5E and B8E). She had few friends but her self-reports reflect no issues with getting along with authority figures or co-workers. As a result, the undersigned finds that she has a mild limitation in this broad area of mental functioning.

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant had mild limitation.

On November 11, 2020, the claimant completed an Adult Function Report (Exhibit B5E). She has problems with paying attention and concentration.

The claimant completed an Adult Function Report on July 6, 2021 (Exhibit B8E). She has problems with paying attention and concentration.

The undersigned notes that the claimant alleged problems with concentration and paying attention (Exhibits B5E and B8E). The undersigned notes that the claimant does not carry a diagnosis of attention deficit disorder and there is no indication that she is taking stimulant medication to manage her symptoms. The undersigned notes that the claimant's concentration was impaired during Dr. Brown's

examination (Exhibit B5F). However, he was a one-time examining mental health professional, who was not in a treatment relationship with the claimant and could not provide care. Approximately nine weeks later, during an evaluation with a treating medical professional, who could provide care, the claimant had intact concentration and attention (Exhibit B6F). Further, even though her evaluations with Ms. Vaccarino were after the date last insured, she continued to exhibit intact concentration and attention between December 2022 and February 2023 (Exhibit B12F). Her concentration was focused in November 2020 (Exhibit B4F). As a result, the undersigned finds that she has a mild limitation in this broad area of mental functioning.

The fourth functional area is adapting or managing oneself. In this area, the claimant had mild limitation.

On November 11, 2020, the claimant completed an Adult Function Report (Exhibit B5E). She has problems with stress and changes.

The claimant completed an Adult Function Report on July 6, 2021 (Exhibit B8E). She has problems with stress and changes.

The undersigned notes that the claimant alleged problems with stress and changes in routine (Exhibits B5E and B8E). The undersigned notes that there is no evidence that the claimant has appeared to be unkempt, malodorous or disheveled during the period at issue (Exhibit B5F). She can manage her safety needs and is careful about her driving (Exhibit B4F). She could manage her emotional state in public. The undersigned considered her allegations of problems with stress and changes in routine in assigning a mild limitation in this area of mental functioning.

Because the claimant's medically determinable mental impairment caused no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it was nonsevere (20 CFR 404.1520a(d)(1)).

*The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.*

The State agency psychological consultants concluded that the claimant had a mild limitation in her ability to understand, remember or apply information, interact with others, concentrate, persist or maintain pace and adapt or manage herself (Exhibits B2A and B3A).

18

The undersigned finds that the opinions of the State agency psychological consultants are persuasive (Exhibits B2A and B3A). They are supported by the evaluations of the psychological consultants at the time they formed their opinions and they are consistent with other medical evidence of record for the reasons noted above.

R. 24–28 (emphasis added). The Court finds no error with the ALJ's findings in this regard. *See* 20 C.F.R. § 404.1520a(d)(1) (providing that an ALJ may conclude that a mental health impairment is non-severe if a claimant's mental health impairment causes only mild limitation in all four B criteria); *cf. Rolick v. Berryhill*, No. CV 17-4481, 2019 WL 625599, at *5 (D.N.J. Feb. 14, 2019) (finding that while the claimant "does have mental health conditions that undoubtedly produced symptoms, the ALJ had a more than adequate basis for concluding that those mental health conditions were not severe as that term is used within the Act" where the claimant's "mental health examinations demonstrated adequate mental functioning with intact thought processes, memory span, and concentration" and "[i]t would be inappropriate for this Court to substitute its own judgment in weighing the mental health evidence because the ALJ properly relied on substantial evidence in her determination that [the claimant's] mental health impairments were non-severe and caused only mild limitations").

Plaintiff nevertheless points to evidence that she believes establishes that her anxiety is severe. *Plaintiff's Brief*, ECF No. 8, pp. 15–16; *Plaintiff's Reply Brief*, ECF No. 17, pp. 3–4. Plaintiff points to medical diagnoses of depression and anxiety. *Plaintiff's Brief*, ECF No. 8, pp. 15–16. However, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does

19

not establish entitlement to benefits under the Act"). Plaintiff also observes that her "treating pain management physician has noted the Plaintiff's depression is directly related to her physical impairments. (AR 347)." *Plaintiff's Brief*, ECF No. 8, pp. 15 (citing R. 347 ("The patient is suffering from depression. PT STATED SHE FEELS A LITTLE DEPRESSED BECAUSE SHE CAN'T DO ANYTHING.") (emphasis in the original)), 16 (citing R. 421–22). This reliance is unavailing: A physician's memorialization of a patient's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted). Moreover, the ALJ expressly considered this evidence at step two, R. 24 ("Dr. McGrath examined the claimant on September 30, 2019 (Exhibit B2F). She indicated that she felt a little depressed because she could not do anything."), and the Court will not reweigh this evidence. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton*, 131 F. App'x at 880 ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). To the extent that Plaintiff relies on her own subjective complaints, *Plaintiff's Brief*, ECF No. 8, pp. 15–16; *Plaintiff's Reply Brief*, ECF No. 17, pp. 3–4, the ALJ specifically explained later in the decision why the ALJ discounted those complaints, R. 30, 33–34, a

20

determination that Plaintiff does not apparently challenge. Plaintiff also points to a consultative examination. *Plaintiff's Brief*, ECF No. 8, p. 16 (citing R. 419–22).[7] However, the ALJ expressly considered this evidence when determining that Plaintiff had no more than mild limitations in all four of the broad areas of functioning under paragraph B of the listings. R. 25–27. The Court again declines Plaintiff's invitation to reweigh this evidence. *See Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880

Moreover, even if the ALJ erred in concluding, at step two, that Plaintiff's anxiety was not a severe impairment, any such error was harmless because the ALJ also found that other impairments were severe, R. 21, and the ALJ continued to evaluate Plaintiff's impairments through the remainder of the five-step sequential evaluation. R. 28–37. Accordingly, Plaintiff has not shown that the ALJ committed reversible error at step two when assessing Plaintiff's mental health impairment. *See Salles,* 229 F. App'x at 145 ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citations omitted).

---

[7] J. Theodore Brown Jr., Ph.D., H.S.P.P., conducted a consultative examination on April 27, 2021, and concluded after that examination:

**DIAGNOSTIC IMPRESSION:**
Major Depression Disorder.
Generalized Anxiety Disorder.
Rule Out Post-Traumatic Stress Disorder.

**PROGNOSIS:** Undetermined, very much dependent upon Claimant receiving appropriate mental healthcare support and treatment and benefiting from the same and receiving appropriate medical care and relief from physical pain and suffering.

**ABILITY TO MANAGE HER OWN FUNDS:** It is recommended that Claimant be better stabilized physically and mentally before being allowed to assume responsibility for managing her financial affairs.

R. 422.

21

### B.    RFC and Opinion Evidence

Plaintiff argues that the ALJ's RFC is flawed because the ALJ failed to include

limitations to accommodate Plaintiff's mild mental limitations and failed to include Dr.

Godleski's opined mental limitations. *Plaintiff's Brief*, ECF No. 8, pp. 16–22; *Plaintiff's Reply*

*Brief*, ECF No. 17, pp. 1–3. The Court disagrees.

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the

RFC to perform sedentary work "except she can occasionally climb ramps or stairs, stoop, kneel,

or crouch but never climb a ladder, rope or scaffold or crawl. No exposure to hazards, such as

machinery, heights or motor vehicles." R. 29. In making this determination, the ALJ considered,

*inter alia*, Plaintiff's hearing testimony that, among other things, she "experiences brain fog

when she is anxious. At the grocery store, she will write a list and then forget things." R. 30. The

ALJ also considered Plaintiff subjective complaints and explained why the record "does not

document sufficient objective medical evidence to substantiate the severity of the pain and

degree of functional limitations alleged by the claimant." R. 33; *see also* R. 30, 34. The ALJ

went on to consider, *inter alia*, the opinions of Dr. Godleski as follows:

> Thomas Godleski, D.O., concluded on October 3, 2022 that the claimant had side
> effects from her medication (Exhibit B9F). Her side effects could be expected to
> limit the effectiveness of her work duties and she would frequently experience
> problems with focus and concentration. She would need to lie down or recline for
> a total of up to 2 hours during the day on a daily basis. She would be absent more
> than 4 days per month and off task 25 percent or more of the work day. Pain
> impacted her functioning. She could walk 1 block without resting or severe pain.
> She could sit less than 4 hours in an 8 hour work day, stand or walk up to 1 hour in
> an 8 hour work day. she could occasionally lift 10 pounds or less and rarely lift 20
> pounds.
>
> Dr. Godleski concluded on October 3, 2022 that the claimant had a mild to
> moderate limitation in all areas aside from performing at a consistent pace without
> an unreasonable number and length of rest periods or dealing with normal work
> stress, which were both marked in their level of limitation (Exhibit B9F).

Dr. Godleski approved a handicap placard for the claimant's car on March 23, 2023 (Exhibit B13F). He concluded that she was severely and permanently limited in her ability to walk due to an arthritic, neurological or orthopedic condition or she could not walk 200 feet without stopping to rest.

The undersigned notes that all of Dr. Godleski's opinions were formed after the date last insured (Exhibit B9F and B13F). The undersigned notes that he has not submitted his treatment notes for this time period or any period of time after September 21, 2020, the only examination treatment note submitted by Dr. Godleski (Exhibit B4F). In his September 21, 2020 examination findings, he noted no functional deficits in any area during his physical examination. As a result, his opinions are not supported by his examination treatment notes. In addition, they are not consistent with other medical evidence of record for the reasons noted above.

R. 35–36.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[8] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

---

[8] As previously noted, Plaintiff's claim was filed on April 20, 2021.

24

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors."). Finally, an ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor" in order to satisfy the articulation requirements for the supportability and consistency factors, providing that the judge "weave[s] supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

Plaintiff argues that the ALJ improperly failed to consider Plaintiff's mental impairment — even if it was non-severe—when crafting the RFC. *Plaintiff's Brief*, ECF No. 8, pp. 16–19; *Plaintiff's Reply Brief*, ECF No. 17, pp. 1–3. Plaintiff specifically contends that the RFC makes no mention of any mental limitations despite the fact that the ALJ found limitations in each of the four areas of mental functioning under paragraph B. *Id*.

To the extent that Plaintiff suggests that the ALJ's finding at step two—*i.e.*, that Plaintiff's non-severe mental impairment of anxiety caused mild mental limitations—requires a particular discussion at step four, "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways"; therefore, "the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). Moreover, "[w]hat matters instead is whether the ALJ properly accounted for any mental impairments in formulating the Plaintiff's RFC." *Brodman v. Bisignano*, No. 3:24:CV-0139, 2025 WL 1993610, at *5–6 (W.D. Pa. July 17, 2025) (finding that the ALJ did properly account for such impairments when, "[a]lthough the ALJ concluded at step two—with references to the record— that Plaintiff's mental impairments were not severe, the ALJ nevertheless went on to consider, at step four of the sequential evaluation process, her anxiety and depressive symptoms as well as any alleged limitations flowing from them, explaining why those mild mental impairments warranted no functional limitations in the RFC). Here, at step two, the ALJ explained why she concluded that Plaintiff had only mild limitations in the four broad areas of mental functioning under paragraph B, R. 24–28, and expressly stated that she considered the paragraph B limitations when crafting the RFC. R. 28 ("The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."). Then, at step four, the ALJ expressly stated that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[,]" R. 29, and acknowledged that, in crafting the RFC, she must consider mental limitations and the ability to perform mental tasks. R.

26

32–33. The ALJ also specifically considered Plaintiff's allegations of "brain fog" and forgetfulness relating to her anxiety. R. 30. However, as previously noted, the ALJ explained why substantial evidence did not support the degree of functional limitation alleged by Plaintiff. R. 30, 33–34. Moreover, as noted above and as discussed in more detail below, the ALJ further considered Plaintiff's alleged limitations flowing from her non-severe mental impairment when she explained why she discounted Dr. Godleski's opinion. R. 35–36. Considering this record as a whole, the Court is not persuaded that the ALJ erred when she did not include any functional limitations in the RFC purportedly flowing from Plaintiff's mild mental limitations. R. 24–36; *see also Williams v. Bisignano*, No. 2:24-CV-1747, 2026 WL 312471, at *1 (W.D. Pa. Jan. 5, 2026) (finding that, "[c]ontrary to Plaintiff's argument, these non-severe impairments and Paragraph B Criteria findings did not require specific limitations in Plaintiff's RFC" where "the ALJ examined the source opinions relating to Plaintiff's mental limitations and found them unpersuasive because they were inconsistent with the medical records" and "found Plaintiff's allegations not fully supported by the objective evidence" and therefore concluding that "[a]ltogether, the record shows that the ALJ provided a sufficient explanation for the crafted RFC finding containing no limitations for Plaintiff's non-severe mental impairments"); *Brodman*, 2025 WL 1993610, at *6 (W.D. Pa. July 17, 2025) (finding that the ALJ sufficiently considered the claimant's mild mental limitations when considering and discounting a consultative opinion and noting that records revealed an unremarkable mental status and concluding that the ALJ's "thorough analysis evidences the ALJ's reliance on sufficient evidence of record to support her conclusion that the Plaintiff was not disabled); *Jennifer J. v. Bisignano*, No. CV 24-1863, 2025 WL 1435628, at *6–7 (E.D. Pa. May 19, 2025) (finding that Plaintiff "has not shown that the ALJ failed to properly capture all of her limitations, including limitations

27

resulting from her mild mental impairments in reaching his determination that she retained the ability to perform the duties of her past relevant work as a bookkeeper" where the ALJ explained that he considered all of Plaintiff's medically determinable impairments, including non-severe impairments; her symptoms to the extent they could be reasonably accepted as consistent with the objective medical evidence; prior administrative medical findings; record evidence that Plaintiff was "usually cooperative calm, polite, friendly, and sociable" and that exam findings "consistently show[ed]" that she was "fully oriented and alert with intact cognition, ability to obey commands, and normal memory, attention and concentration" and "mental status exams showing [that she] was generally alert, oriented, and cooperative with no psychosis, no ongoing suicidal/homicidal ideation, and normal memory, attention, and concentration"); *cf. Makowski v. Comm'r of Soc. Sec.*, No. CV 16-1656 (JBS), 2017 WL 3151243, at *6–7 (D.N.J. July 24, 2017) ("Plaintiff has not offered any support for her position that someone with a mild limitation in three broad functional areas . . . is incapable of performing a job rated with a skill level of six, as her past relevant work as a bookkeeper is. . . . Because the ALJ need only include credible limitations in the RFC, and because there is substantial evidence supporting the ALJ's conclusion that Plaintiff's mental impairments would cause only mild limitations on her daily life and not impact her work, the Court will not remand on this basis.").

Although Plaintiff complains that the ALJ failed to accommodate in the RFC Plaintiff's "discernable limitations, consistent with the Plaintiff's testimony regarding her memory lapses, fatigue, or anxiety", she does not identify in functional terms what those limitations are. *Plaintiff's Brief*, ECF No. 8, pp. 18–19; *Plaintiff's Reply Brief*, ECF No. 18, pp. 2–4. Plaintiff's observation that a treating physician "noted the Plaintiff's depression is directly related to her physical impairments," *Plaintiff's Reply Brief*, ECF No. 17, p. 2 (citing R. 347), and her

28

reference to the findings of the consultative examiner, Dr. Brown, *Plaintiff's Reply Brief*, ECF No. 17, pp. 2–3; R. 419–22, are similarly unavailing because those sources failed to articulate any functional limitations.

To the extent that Plaintiff points to a portion of the vocational expert's testimony, based on a hypothetical RFC that was different from that ultimately found by the ALJ, *i.e.*, one that includes a limitation to simple tasks, *Plaintiff's Brief*, ECF No. 8, p. 18 (citing R. 60), the ALJ did not err in omitting that unsupported limitation. *See Podedworny*, 745 F.2d at 218 (stating that a "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments"); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."); *Peterman v. Berryhill*, No. CV 18-13751, 2019 WL 2315016, at *8–10 (D.N.J. May 31, 2019), *appeal dismissed* (Dec. 19, 2019) ("[T]here was ample evidence in the record indicating that Plaintiff's mild mental impairments did not meaningfully impact her ability to function during the relevant period. . . . Thus, the ALJ's decision to exclude Plaintiff's mild mental impairments from the RFC was supported by substantial evidence, nor did the ALJ err by failing to include Plaintiff's mild mental limitations in her hypothetical question to the VE."); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698 (RBK/KMW), 2019 WL 413539, at *9 (D.N.J. Jan. 31, 2019) ("[T]he ALJ does not have a duty to respond to Plaintiff's counsel's attempts to expand the hypothetical question. Again, SSR-004P only focuses on apparent conflicts with the VE's testimony and the DOT

listing, not attempted conflicts with the initial ALJ hypothetical and a newly revised one from Plaintiff's counsel").

Plaintiff next complains that the ALJ erred in discounting Dr. Godleski's opinions, asserting that, "as a practical matter, the ALJ's basis for rejecting the medical evidence due to a lack of medical evidence from that provider is factually incorrect." *Plaintiff's Brief*, ECF No. 8, pp. 19–22; *see also Plaintiff's Reply Brief*, ECF No. 18, p. 3. Noting that his medical opinion is dated October 3, 2022 (*i.e.,* after the date last insured of December 31, 2021), the doctor stated that he had treated Plaintiff for more than eleven years. *Plaintiff's Brief*, ECF No. 8, p. 20. According to Plaintiff, Dr. Godleski's "notes are dispersed throughout the medical record and are part of a medical facility in which she sees multiple different providers, including Dipal Willoughby, Dr. Pradeep Patel (opthamology [sic]), Dr. Murray Buck and Dr. Shika Chowdhury." *Id*. (citing R. 363–418). Therefore, Plaintiff argues, "[t]he ALJ's determination that this medical opinion is not persuasive because his name is not on each medical record, is, at best, a disingenuous statement" and that the ALJ was not free to ignore contrary evidence. *Id*. at 20–21. Had the ALJ properly considered Dr. Godleski's opinion, Plaintiff argues, the outcome would have been "markedly different" because the ALJ would have concluded that Plaintiff could not perform her past semi-skilled and skilled work. *Id*. at 22.

Plaintiff's arguments are not well taken. As detailed above, the ALJ properly noted that the single treatment note from Dr. Godleski, from September 2021, did not support his extreme opinion. R. 35–36. Plaintiff has not persuaded this Court that the ALJ erred in oncluding that this physician's opinion was not supported by his own treatment notes. *Id.*; *see also* 20 C.F.R. § 404.1520c(c)(1); *Pipkin v. Kijakazi*, No. CV 22-2-E, 2023 WL 411291, at *1 (W.D. Pa. Jan. 25, 2023) ("'[S]upportability relates to the extent to which a medical source has articulated support

for the medical source's own opinion[.]'") (quoting *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021)); *Tyler E. K. v. Comm'r of Soc. Sec.*, No. 21-9623, 2022 WL 3913559, at *6 (D.N.J. Aug. 31, 2022) (finding that the ALJ appropriately considered the supportability and consistency factors by citing the physician's treatment notes and other evidence in the record). The ALJ next explained that Dr. Godleski's opinion was "not consistent with other medical evidence of record for the reasons noted above." R. 36. That other evidence included, *inter alia*, Plaintiff's subjective complaints, which the ALJ discounted, and, with one exception, evidence that Plaintiff had no memory deficits and had intact insight and judgment; evidence that she had no issues getting along with authority figures and had never been fired from a job because of problems getting along with others; no evidence that Plaintiff appeared unkempt or disheveled during the relevant period; and evidence that Plaintiff was able to drive and could manage her emotional state in public. R. 24–28, 30, 33. Based on this record, the ALJ properly found that Dr. Godleski's extreme opined mental limitations were not consistent with the record. *See id.*; *see also* 20 C.F.R. § 404.1520c(c)(2); *Celento v. Comm'r Soc. Sec.*, 613 F. App'x 205, 206–07 (3d Cir. 2015) (noting that daily activities such as, *inter alia*, driving "require at least some . . . mental concentration"); *Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions. . . . The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness.").

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC enjoy substantial support in the record, as does her consideration of Dr. Godleski's opinion.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  April 14, 2026                                           *s/Norah McCann King*
                                                              NORAH McCANN KING
                                                     UNITED STATES MAGISTRATE JUDGE